**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

AMIR ISAIAH, Esq., as court appointed Receiver
of Coravca Distributions, LLC, Timeline Trading
Corp., Edgewater Technologies, CA, Corp., and
Edgewater Technologies, S.A.,

        Plaintiff,

v.                            CASE NO. 1:16-cv-21771-JEM

JPMORGAN CHASE BANK, N.A., a national
banking association,

        Defendant.

_____/

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT AND ACCOMPANYING MEMORANDUM OF LAW**

Edward M. Mullins (FBN 863920)
emullins@astidavis.com
Cristina M. Suárez (FBN 29614)
csuarez@astidavis.com
ASTIGARRAGA DAVIS MULLINS &
GROSSMAN, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

Mary J. Hackett (admitted pro hac vice)
mhackett@mcguirewoods.com
Jarrod D. Shaw (admitted pro hac vice)
jshaw@mcguirewoods.com
McGuireWoods LLP
625 Liberty Avenue
Pittsburgh, PA 15222
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

# TABLE OF CONTENTS

I.      Introduction ................................................................................................- 1 -

II.     Factual Allegations .......................................................................................- 3 -

III.    Legal Argument ...........................................................................................- 6 -

    A.    Pleading Standard For A Motion To Dismiss.................................................- 6 -

    B.    Counts II-IV Should Be Dismissed With Prejudice Because The Receiver Has
Failed To State A Claim For Aiding And Abetting Liability Against JPMC.....- 7 -

        1.    The Receiver's Aiding And Abetting Claims Should Be Dismissed
Because The Receiver Has Not Pled Sufficient Facts To Show That
JPMC Had Actual Knowledge Of The Ponzi Scheme...........................- 7 -

        2.    JPMC Did Not Provide Substantial Assistance To The Ponzi Scheme
And The Receiver Has Pleaded No Facts Showing That It Did...........- 11 -

        3.    The Receiver Cannot Properly Plead The Underlying Torts Because
The Receivership Entities Cannot Be Both Tortfeasors And Victims..- 12 -

    C.    The Receiver's FUFTA Claim Should Be Dismissed Because The Receiver
Has Not Pled Sufficient Facts To State A Claim...............................................- 13 -

        1.    The Receiver Has Not Alleged That He Is A FUFTA Creditor ...........- 14 -

        2.    The Receiver Has Not Alleged That There Was A FUFTA Transfer ..- 15 -

        3.    The Receiver Has Not Alleged That JPMC Is A FUFTA Transferee ..- 16 -

        4.    The Receiver Has Not Alleged Facts Establishing That JPMC Was
The Intended Recipient Of The Purported Transfers Or Ever Had
Control Over The Transferred Funds...................................................- 18 -

IV.     Conclusion ...................................................................................................- 20 -

## **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................6, 9, 14

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007).............................................................................6, 7, 8, 9

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.,*
    No. 05-60080CIV, 2008 WL 926513 (S.D. Fla. Mar. 31, 2008)...........................11

*Davis v. Coca-Cola Bottling Co. Consol.,*
    516 F.3d 955 (11th Cir. 2008) .........................................................................6

*El Camino Resources, Ltd. V. Huntington Nat'l Bank,*
    722 F. Supp. 2d 875 (W.D. Mich. 2010) .........................................................10

*Feltman v. Prudential Bache Secs.,*
    122 B.R. 466 (S.D. Fla. 1990) .......................................................................12

*Freeman v. Dean Witter Reynolds, Inc.,*
    865 So. 2d 543 (Fla. 2d DCA 2003) .............................................................9, 15

*Freeman v. First Union Nat'l Bank,*
    865 So. 2d 1272 (Fla. 2004)...........................................................................17

*Groom v. Bank of Am.,*
    No. 9:08-cv-2567, 2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ......................7, 10, 11

*O'Halloran v. First Union Nat'l Bank of Fla.,*
    350 F.3d 1197 (11th Cir. 2003) ...................................................................8, 19

*In re Chase & Sanborn Corp.,*
    848 F.2d 1196 (11th Cir. 1988) .....................................................................18

*In re Customs Contractors, LLC,*
    745 F.3d 1342 (11th Cir. 2014) .....................................................................17

*In re Meridian Asset Mgmt., Inc.,*
    296 B.R. 243 (Bankr. N.D. Fla. 2003).............................................................8, 9

*In re Pony Express Delivery Servs., Inc.,*
    440 F.3d 1296 (11th Cir. 2006) .....................................................................16

*Isaiah v. Wells Fargo Bank, N.A.*
    Case No. 14-15246-CA-40 (11th Judicial Circuit in and for Miami-Dade
    County) ........................................................................................... *passim*

*Lamm v. State Street Bank & Trust,*
   749 F.3d 938 (11th Cir. 2014) ...........................................................................7

*Lawrence v. Bank of Am., N.A.,*
   455 F. App'x 904 (11th Cir. 2012) .......................................................... *passim*

*P&M Business Systems, Corp., et al.,*
   Case No. 10-49586 CA 40 (11th Judicial Circuit in and for Miami-Dade
   County) ...........................................................................................................4

*Perlman v. Wells Fargo Bank., N.A.,*
   559 F. App'x 988 (11th Cir. 2014) .......................................................... *passim*

*Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.,*
   534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...........................................................16

*Weshnak v. Bank of Am., N.A.,*
   451 F. App'x 61 (2d Cir. 2012) ......................................................................11

*Wiand v. Waxenberg,*
   611 F. Supp. 2d 1299 (M.D. Fla. 2009) ..........................................................19

*Wiand v. Wells Fargo Bank, N.a.,*
   86 F. Sup. 3d 1316 (M.D. Fla. 2015) ...............................................13, 15, 16, 17

**Statutes**

Am. Jur. 2d Torts § 61 ............................................................................................13

Fla. Stat. § 726.102 ...............................................................................................15

Fla. Stat. § 726.105 .............................................................................................1, 13

Defendant JPMorgan Chase Bank, N.A. ("JPMC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves the Court for an Order dismissing the Receiver's Complaint in its entirety. The Complaint alleges four causes of action: (1) avoidance and recovery of fraudulent transfers pursuant to Florida Statute § 726.105(1)(a), (2) aiding and abetting breach of fiduciary duty, (3) aiding and abetting conversion, and (4) aiding and abetting fraud, all arising out of an alleged Ponzi scheme perpetrated by Rosa Villaroel, Diego Corado, their cohorts, and the Receivership Entities[1] that the Receiver now represents. For the reasons set forth below in the accompanying memorandum of law, each of these counts fails to state a claim upon which relief can be granted, and the Complaint should be dismissed in its entirety, with prejudice.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

This lawsuit is the latest in a series of the Receiver's failed attempts to hold several banks responsible for the acts of purported Ponzi schemers Rosa Villaroel and Diego Corado, their associates, and their business entities. In each of these cases – the first two brought against Bank of America and Wells Fargo, and now this latest against JPMC – the banks did nothing more than provide routine banking services to those business entities. As in the cases that have gone before, the Receiver does not allege that JPMC operated the scheme, nor does the Receiver offer any factual allegations showing that JPMC had any actual knowledge of the scheme, participated in the scheme, or ever had control of any of the funds passing through the at-issue bank accounts. The Receiver contends, basically, that JPMC should have figured out what Villaroel, Corado, and their companies were doing, and because JPMC did not figure it out and then put a stop to

---

[1] Coravca Distributions, LLC, Timeline Trading Corp., Edgewater Technologies, CA, Corp., and Edgewater Technologies, S.A.

the scheme quickly enough, JPMC is now the party to be held responsible under theories of aiding and abetting and fraudulent transfer.

The Receiver's claims are flawed as a matter of law and, in fact, the Receiver's almost-identical complaint against Wells Fargo was dismissed in its entirety by a Florida court. *Isaiah v. Wells Fargo Bank, N.A.*, Case No. 14-15246-CA-40 (11th Judicial Circuit in and for Miami-Dade County) (Thornton, J.), Slip Copy attached as Exhibit A.[2]  That decision provides a roadmap for this Court to dismiss this case with prejudice in short order.

Banks are not guarantors of their customers' conduct, and from this concept stem dispositive flaws in each of the Receiver's claims.  As to the Receiver's three claims based on aiding and abetting liability, multiple courts within this Circuit have held that to state a claim for aiding and abetting, a plaintiff must offer well-pleaded factual allegations that a bank not only had "actual knowledge" that its customer was operating a fraudulent scheme, but that the bank offered "substantial assistance" to that customer in furthering the scheme.  Allegations that a bank "should have known" about alleged misconduct due to allegedly suspicious activities or "red flags" are not sufficient to sustain the requirement to plead actual knowledge of a fraud. Likewise, that a bank provided routine banking services, which is all that is alleged here, is insufficient to show "substantial assistance."  Here, the Receiver has not alleged that JPMC had the requisite actual knowledge of the schemers' wrongful conduct, or that it provided them with substantial assistance.  Nor can the Receiver plausibly allege the required underlying torts (breach of fiduciary duty, conversion, and fraud) because the essence of his claim is that the Receivership Entities both committed ***and*** were victimized by the torts in question.

---

[2] The Bank of America case settled before the Court reached Bank of America's motion to dismiss.

The Receiver further attempts to state fraudulent transfer claims under Chapter 726 of the Florida Statutes ("FUFTA"), despite courts in this Circuit recently holding that such fraudulent transfer claims simply do not apply when a bank is being accused of maintaining accounts that were involved in a Ponzi scheme.  Where the Ponzi schemers are moving money between and amongst accounts they control, there can be no FUFTA creditor, no FUFTA transfer, and no FUFTA transferee, as required by the statute.  Further, a bank cannot be held liable as a transferee under FUFTA where it is acting in good faith and does not have knowledge of the scheme being perpetrated.  The Ponzi schemers and the Receivership Entities (on whose behalf the Receiver now seeks recovery) – not JPMC – worked together to defraud the alleged victims of the scheme, and there is no way to align the parties in a way that leaves JPMC responsible under FUFTA for their actions.

For the reasons explained in detail below, the Receiver's Complaint should be dismissed in its entirety, with prejudice.

## II.   FACTUAL ALLEGATIONS

Plaintiff Amir Isaiah brings claims against JPMC as the court-appointed receiver of Coravca Distributions, LLC and related companies (collectively, the "Receivership Entities"). Compl. ¶ 1.  The Receiver seeks to hold JPMC liable for the actions of Rosa Villaroel and Diego Corado, who were the alleged "masterminds" of a Ponzi scheme, as well as for the actions of the Receivership Entities.  *Id.* ¶ 9.  Plaintiff alleges that the "non-entity" Ponzi schemers – Villaroel and Corado – "asserted complete control over the Receivership Entities" and that Coravca Distributions, "through" the individual Ponzi schemers, "solicited millions of dollars from hundreds of investors" by fraudulently misrepresenting that the investors could earn implausibly spectacular rates of return from purported investments in Venezuelan and U.S. currency.  *Id.*

¶¶ 15-16, 18, 20.  The supposed investment returns actually "were made up of other investors' investments in order to falsely represent a profit." *Id.* ¶ 18.

According to the Receiver, the scheme unraveled in 2010, and the defrauded investors commenced an action against Villarroel, Corado, and the Receivership Entities for their role in the scheme in September 2010.  *Id.* ¶ 8.  The Receiver was appointed for the Receivership Entities in *P&M Business Systems, Corp., et al. v. Coravca Distributions LLC, et al.*, Case No. 10-49586 CA 40 (11th Judicial Circuit in and for Miami-Dade County), on September 16, 2010. *Id.* ¶ 11.  The Complaint in this case was filed on May 10, 2016, almost six years after the Receiver was appointed.

Tellingly, throughout the Complaint's detailed explanation of how the scheme was perpetrated, there are no allegations as to how JPMC allegedly was involved in the Ponzi scheme.  *See* Compl. ¶¶ 1-27.  Indeed, after more than five years to investigate the Ponzi scheme and collect evidence, the Receiver does not and cannot claim that JPMC participated in it. Rather, the Receiver bases his claims entirely on his allegations that JPMC "failed [to follow] or otherwise willfully ignored ... sound banking practices and procedures, including applicable anti-money laundering and 'know your customer' rules and regulations." *Id.* ¶ 39.  According to the Receiver, these "rules and regulations" purportedly would have alerted JPMC during the time that the Ponzi schemers had accounts there that there were "questionable activities and transactions" in the Receivership Entities' accounts, which were controlled by the individual Ponzi schemers.  *Id.*

Specifically, the Receiver alleges that JPMC failed to identify Villarroel as a felon and failed to perform a "proper social security check that would have revealed" Villarroel's alias and felon status.  *Id.* ¶ 40.  But, according to the Complaint, Villarroel did not open JPMC accounts –

the Receivership Entities did.  *Id.* ¶ 28 (Ponzi schemers opened "accounts for the Companies"). The Receiver does not plead any facts demonstrating how Villaroel's social security number would have come into play when an account was being opened for, as one example, Coravca Distributions, LLC.  Nor does the Receiver plead any facts that make it plausible that the other supposed lapses were indeed lapses in procedure or that they actually occurred – namely, alleged failures to investigate the Receivership Entities' websites, and failing to identify or ignoring low monthly balances, "large dollar, even money transactions" and "a high volume of even money deposits and/or withdrawals."  *Id.* ¶ 40.   Instead, the Receiver seems to rely on vague and conclusory assertions that because the schemers banked at JPMC with a spike in activity in 2010, lapses *must* have occurred.  *Id.* ¶ 31.  Of course, none of these supposed lapses shows that JPMC had actual knowledge of any Ponzi scheme.

The Receiver also goes the additional step of claiming that JPMC is at fault for activity that occurred *after* JPMC closed the Receivership Entities' accounts, according to the Receiver, following JPMC's own anti-money laundering procedures.  *Id.* ¶ 41.  To be clear, the Receiver actually claims that while JPMC closed the accounts – presumably what the Receiver believes JPMC should have done, given the purported Ponzi scheme – JPMC *still* should be held liable for the Receivership Entities' subsequent activities because the Ponzi schemers then took their business to other banks.  *Id.*

Finally, although the Receiver is authorized only to bring "claims and causes of actions otherwise belonging to the Receivership Entities" (*id.* ¶ 13), he does not allege any facts showing that the *Receivership Entities,* as opposed to the defrauded investors, have any claims or causes of action against JPMC.  Indeed, his allegations that the Receivership Entities are defrauded creditors or tort victims are inconsistent with his allegations that the Entities themselves were

wrongdoers and Ponzi schemers.  *See, e.g., id.* ¶ 15 (Coravca Distributions, through individual Ponzi schemers, '"solicited millions of dollars from hundreds of investors in a brazen Ponzi scheme'"), *id.* ¶ 16 (Coravca, through individual Ponzi schemers, "fraudulently misrepresented" fantastical rates of return).

## III.   <u>LEGAL ARGUMENT</u>

### A.   **Pleading Standard For A Motion To Dismiss.**

A complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008) (noting that factual allegations must raise a right to relief above the speculative level).  For a claim to be facially plausible, a plaintiff must plead "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

Accordingly, the relevant question is not whether any facts *could be* invented that would state a claim for relief, but whether sufficient facts *have been pled* in the first instance to support the legal claims asserted.  *Iqbal*, 556 U.S. at 678-82 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" and dismissal is required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.").  Applying this controlling standard to the limited factual allegations contained in the Complaint, dismissal of all of the claims against JPMC is warranted.  Once the Receiver's conclusory and unsupported allegations are disregarded, the remaining factual allegations as to JPMC's role in the scheme are insufficient to survive a motion to dismiss.

**B.      Counts II-IV Should Be Dismissed With Prejudice Because The Receiver Has Failed To State A Claim For Aiding And Abetting Liability Against JPMC.**

In Counts II-IV, the Receiver alleges that JPMC "aided and abetted" the Ponzi schemers' breach of fiduciary duty, conversion, and fraud against the Receivership Entities during the perpetration of the Ponzi scheme.  *See* Compl. ¶¶ 57, 70-71, 76-78.  To state an aiding and abetting claim under Florida law, the Receiver must allege (1) an underlying violation on the part of the primary wrongdoer; (2) actual knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012).[3]  The Receiver has failed to state a claim in Counts II-IV, however, because he has not alleged facts to establish any of these elements.

**1.      The Receiver's Aiding And Abetting Claims Should Be Dismissed Because The Receiver Has Not Pled Sufficient Facts To Show That JPMC Had Actual Knowledge Of The Ponzi Scheme.**

"[W]hen a claim of aiding and abetting is asserted against a bank, the second element – knowledge – will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings."  *Perlman*, 559 F. App'x at 993 (citing *Lawrence*, 455 F. App'x at 907); *see also Lamm v. State Street Bank & Trust,* 749 F.3d 938, 950 (11th Cir. 2014).  Simply alleging the occurrence of atypical banking transactions is insufficient to plead the actual knowledge element of aiding and abetting.  *Lawrence*, 455 F. App'x at 907.  "To be liable, the bank would have had to have actual knowledge of [its customer's] fraudulent activities" and "allegations [of atypical banking transactions] simply fail to make that 'plausible.'"  *Id.* (citing *Twombly*, 550 U.S. at 570); *see also Groom v. Bank of Am.*, No. 8:08-cv-

---

[3] For purposes of this motion to dismiss, JPMC analyzes each of the aiding and abetting claims together, because the elements are the same.  *See Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014).

2567, 2012 WL 50250, at *1 (M.D. Fla. Jan. 9, 2012) (dismissing complaint seeking to impose liability on bank for aiding and abetting a customer's Ponzi scheme based on allegations regarding "atypical and irregular banking practices" and failure to "adhere to the customary and accepted standard of care and fail[ure] to monitor incoming deposits and wires and other monies" because such allegations do not create a plausible inference of actual knowledge of a customer's wrongdoing); *Perlman*, 559 F. App'x at 993 ("Perlman alleges a multitude of atypical transactions and procedural oddities . . . [that] fall short of raising a plausible inference that Wells Fargo actually knew that Theodule was engaging in fraudulent activity.").

The Eleventh Circuit specifically has rejected any "should have or could have known" theory of aiding and abetting liability.  Such a theory would impose a duty upon banks to scrutinize and investigate the activities underlying their customers' deposits, transfers, and withdrawals to ensure that those activities are legitimate.  A bank has no such duty.  *Lawrence,* 455 F. App'x at 907 ("Florida does not require banking institutions to investigate transactions."); *Perlman*, 559 F. App'x at 993 ("Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*."); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264 (Bankr. N.D. Fla. 2003) ("[I]n the absence of a special deposit agreement . . . an account is labeled 'general,' and is an arms-length transaction imparting no duty on behalf of the Bank to monitor and investigate."); *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003) ("The bank is responsible only for making sure that [the corporate representative], at the time of the withdrawal, has the authority to make withdrawals on behalf of the accountholder entity.").  Nor does a bank owe a duty to

individuals who are not its customers to investigate account transactions on their behalf. *Freeman v. Dean Witter Reynolds, Inc*., 865 So. 2d 543, 549, 553-54 (Fla. 2d DCA 2003) (investors in a Ponzi scheme could not state a claim against the bank unless they could "allege that [the bank] made a fraudulent or negligent misrepresentation to them personally"). Finally, the individual or entity depositing funds with a bank is "the Bank's customer, not the investors, and as such the Bank owe[s] [its customer] a duty of confidentiality." *In re Meridian*, 296 B.R. at 264.

Here, the Complaint does not state aiding and abetting claims as a matter of law. The Receiver claims that JPMC had actual knowledge because it "knew of questionable activities and transactions being conducted in the accounts" and "discover[ed] fraudulent activity." Compl. ¶¶ 39, 41. Bare conclusory assertions of knowledge are tantamount to a "formulaic recitation" of the knowledge element of aiding and abetting, which is insufficient under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Nor can the Receiver's allegations of red flags carry the day. The Receiver asserts that JPMC had actual knowledge because it "allow[ed] the ... [a]ccounts to remain open," "continu[ed] to permit suspicious deposits, withdrawals, and transfers," and allegedly wrote "Fraud on account – transfer to new account" on two deposit slips (which, though Plaintiff ignores this detail, coincided with the opening of the two new accounts alleged in Compl. ¶ 32). Compl. ¶¶ 43, 65, 79. These allegations are clearly insufficient under Florida law to adequately plead aiding and abetting liability.

In *Lawrence*, a case like this one involving aiding and abetting claims against a bank arising out of an alleged Ponzi scheme, the Eleventh Circuit directly held that allegations of

- 9 -

"numerous deposits, withdrawals, and wire transfers involving large amounts of money" and claims that the transactions were "atypical," and therefore the bank "should have known" of the scheme, were "insufficient under Florida law to trigger liability."   455 F. App'x at 907. Similarly, in *Perlman,* the Eleventh Circuit explained that the receiver "allege[d] a multitude of atypical transactions and procedural oddities, including: [the Ponzi schemer's] opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, large cash deposits and withdrawals, the absence of any investment activity, and [the bank's] lifting of the freeze on [one] account without further investigation." 559 F. App'x at 993. But those allegations "[fell] short of raising a plausible inference that [the bank] actually knew that [the schemer] was engaging in fraudulent activity." *Id.*  The same is true here.

The Receiver attempts to circumvent his pleading obligations by contending that JPMC failed to follow its policies and federal anti-money laundering regulations.  *See, e.g.,* Compl. ¶¶ 39, 44.  However, allegations relating to a bank's supposed failure to follow its own policies or federal anti-money laundering regulations are insufficient to show actual knowledge or to state a claim.  *Groom,* 2012 WL 50250, at *1, 3 (allegations that defendant banks engaged in "atypical and irregular banking practices and failed to follow their own internal procedures" were insufficient to establish banks' actual knowledge of alleged Ponzi activity); *El Camino Resources, Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010), ("[C]ourts have routinely rejected the notion that a bank's failure to execute a duty to investigate, whether that duty is alleged to arise from federal regulation or the bank's own internal policies, somehow satisfies the actual knowledge standard.") (collecting cases), *aff'd*, 712 F.3d 917 (6th Cir. 2013).

In short, the Receiver has not set forth facts to show that JPMC had actual knowledge of the Ponzi scheme.  This conclusion is confirmed by Judge Thornton's decision in the *Wells Fargo* case, finding on nearly identical allegations that "[t]here are no allegations that Wells Fargo had knowledge of" the underlying wrongdoing.  *See* Exh. A at 3 (*Isaiah v. Wells Fargo Bank, N.A.*, Case No. 14-15246-CA-40 (11th Judicial Circuit in and for Miami-Dade County)).  The Receiver has failed to state a claim for aiding and abetting claims in Counts II-IV and those claims should be dismissed with prejudice.

      **2.**    **JPMC Did Not Provide Substantial Assistance To The Ponzi Scheme And The Receiver Has Pleaded No Facts Showing That It Did.**

Besides the Receiver's inability to allege actual knowledge, there is another fatal flaw with the aiding and abetting claims: the Receiver's failure to allege that JPMC rendered substantial assistance in committing the wrongdoing.  Here, the Receiver's only allegations of substantial assistance are that JPMC allowed the Receivership Entities' accounts "to remain open and in good standing" at JPMC and then "failed to prevent the Ponzi Schemers from opening up new corporate bank accounts" at other banks.  *See* Compl. ¶¶ 41, 65, 79.  However, these allegations describe nothing more than routine banking services which, alone, are insufficient to state a claim for substantial assistance.  *Lawrence*, 455 F. App'x at 906; *see also Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080CIV, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008) (unknowingly providing routine services to a wrongdoer does not amount to substantial assistance); *Groom,* 2012 WL 50250 at *4 (allegations that bank permitted customer to engage in suspicious transactions were insufficient to show substantial assistance); *Weshnak v. Bank of Am., N.A.,* 451 F. App'x 61, 62 (2d Cir. 2012) ("A bank's provision of 'its usual banking services to a customer…does not in and of itself rise to the level of substantial assistance.").  Again, on nearly identical allegations, Judge Thornton dismissed the

aiding and abetting claims against Wells Fargo, finding "[t]here are no allegations that Wells Fargo … provided substantial assistance or encouragement in the wrongdoing." *See* Exh. A at 3 (*Isaiah v. Wells Fargo Bank, N.A.*, Case No. 14-15246-CA-40 (11th Judicial Circuit in and for Miami-Dade County)). Accordingly, the Receiver's aiding and abetting claims fail for this reason as well.

### 3. The Receiver Cannot Properly Plead The Underlying Torts Because The Receivership Entities Cannot Be Both Tortfeasors And Victims.

Lastly, the Receiver has failed to state a claim for aiding and abetting because he has not pled sufficient facts to establish the underlying torts of breach of fiduciary duty, conversion, and fraud. As an initial matter, the Receiver's allegations do not explain how the Receivership Entities' directors and officers could have "converted property of the Receivership Entities" (Compl. ¶ 71) when that property already had been stolen, converted, or otherwise illegally obtained from the innocent investors by the time it was deposited with JPMC. *Feltman v. Prudential Bache Secs.*, 122 B.R. 466, 473-74 (S.D. Fla. 1990) ("Everything [the individual Ponzi schemer] stole from [the corporations he used to perpetrate his fraud], the [corporations] had stolen from the [defrauded individuals]. Thus, any alleged injury to the [corporations] is ... illusory.").

More fundamentally, the Complaint fails to allege the underlying torts for the simple reason that a person cannot both commit a tort and be a victim of that tort. The Receiver admits that the Receivership Entities, through the individual Ponzi schemers, committed the very frauds that underlie this case. *See, e.g.*, Compl. ¶ 15 ("Coravca Distributions ... 'solicited millions of dollars from hundreds of investors in a brazen Ponzi Scheme'"), *id.* ¶ 16 ("Coravca ... fraudulently misrepresented" to the investors that they could achieve fantastical rates of return). Accordingly, the Receivership Entities cannot be both the *tortfeasors* for the sake of pleading the

scheme, and also the tort *victims* for the sake of permitting the Receiver to bring tort claims against JPMC.  The Receiver's assertions that the Receivership Entities both perpetrated and were wronged by the underlying conversion, breach of fiduciary duty, and fraud are incompatible with basic tenets of tort law.  *See* 74 Am. Jur. 2d Torts § 61 ("[A] plaintiff generally cannot recover from a defendant for the defendant's aiding and abetting the plaintiff s own tortious conduct").  Consequently, the Receiver cannot plead the existence of the underlying torts to sustain his aiding and abetting claims.

**C.    The Receiver's FUFTA Claim Should Be Dismissed Because The Receiver Has Not Pled Sufficient Facts To State A Claim.**

Invoking FUFTA, the Receiver alleges that he is entitled to recover monies on behalf of the Receivership Entities for cash transfers that occurred into, out of, and between the Receivership Entities' accounts.  Compl. ¶¶ 38, 49-50.  This claim fails for a number of reasons.

To state a claim under FUFTA, a plaintiff must allege: (1) a defrauded creditor; (2) a debtor intending fraud; and (3) a conveyance of property that could have been applicable to the payment of the debt.  *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1325 (M.D. Fla. 2015) (citing Fla. Stat. § 726.105(1)(a)).  As outlined below, the Receiver has not pleaded, and cannot plead, these elements.  Moreover, a transferee (like the Receiver alleges JPMC was here) that was a mere conduit and did not exercise control over the funds cannot be held liable under FUFTA.  Any of these reasons, standing alone, is sufficient to dismiss the FUFTA claim. Indeed, when presented with these same arguments, Judge Thornton observed that "the avoidance and recovery of fraudulent transfer statute seems inappropriate as applied to the bank," and moreover, it did "not appear from a plain reading of [FUFTA] that it was intended to be used in this manner."  *See* Exh. A at 1 (*Isaiah v. Wells Fargo Bank, N.A.*, Case No. 14-15246-

CA-40 (11th Judicial Circuit in and for Miami-Dade County)).   Accordingly, Judge Thornton

dismissed the Receiver's nearly identical FUFTA claim against Wells Fargo.  *Id.*

> **1.** **The Receiver Has Not Alleged That He Is A FUFTA Creditor.**

To state a claim for fraudulent transfer, it is not enough to allege that Coravca

Distributions made deposits into and withdrawals from its bank accounts (Compl. ¶¶ 37-38, 49 &

Exs. 2-3), or that it made "Intercompany Transfers" between its accounts (Compl. ¶¶ 38, 49 &

Ex. 4).   Instead, the Receiver must plead sufficient facts to support the elements of the legal

claims asserted, namely: a FUFTA creditor, a FUFTA debtor, and a disposition of property.

*Iqbal*, 556 U.S. at 678-82.

The Receiver, however, fails to allege any transfer of funds involving a FUFTA creditor.

The Receiver points to deposits to and withdrawals from Coravca Distributions' account as a

basis for his FUFTA claim (Compl. ¶¶ 37-38, 49 & Exs. 2-3), but there is no indication that any

of those transactions constituted a transfer at all.   The Receiver also points to "Intercompany

Transfers" (Compl. ¶¶ 38, 49 & Ex. 4), but the mere movement of funds from one Coravca

account to another does not make Coravca a creditor within the meaning of the statute.   To allege

a FUFTA creditor, the Receiver must state ultimate facts showing that Coravca had a legitimate

expectation of repayment – for example, that the transferee entity gave Coravca a promissory

note.   There are no allegations demonstrating such an expectation, and it is difficult to imagine

how Coravca could have expected repayment, legitimately or otherwise, given the allegation that

the "transfers were made in furtherance of the Ponzi Scheme" and all appear to have been made

between accounts held by the *same entity* (Coravca Distributions) in any event.   Compl. ¶ 52 &

Exs. 2-4.   The Receiver's claim that the "Receivership Entities" were creditors of the

"Receivership Entities" thus is illogical and does not establish a FUFTA creditor.

To be clear, the Receiver also cannot establish the "creditor" element by claiming that investors are creditors.  It is well settled that a receiver "cannot pursue claims owned directly by the creditors" such as the Ponzi scheme victims.  *Freeman,* 865 So.2d at 550.  Instead, a receiver is entitled to bring only actions previously owned by the *receivership entities themselves. See id.* ("[T]he receiver is not the class representative for creditors and receives no general assignment of rights from the creditors.  Thus, the receiver can bring actions previously owned by the party in receivership.").  The order appointing the Receiver confirms as much.  Compl. Ex. 1 (Receivership Order) ¶ 5 ("The Receiver shall be vested with the usual powers and duties of equity Receivers."); *id.* ¶ 5(i) ("The Receiver is specifically authorized and empowered to file suit ... to recover property *of the Receivership Entities,*" not the defrauded investors) (emphasis added).  The Receiver, therefore, must allege facts showing that the Receivership Entities themselves were creditors under FUFTA.  He has failed to do so, and so his FUFTA claim fails.

### 2.    The Receiver Has Not Alleged That There Was A FUFTA Transfer.

The Receiver also fails to allege a FUFTA transfer.  A "transfer" under FUFTA is "every mode … of disposing of or parting with an asset." Fla. Stat. § 726.102(14).  This very issue was recently analyzed by the Middle District of Florida in an analogous case, involving a receiver for multiple Ponzi entities seeking to hold a bank liable for alleged fraudulent transfers as part of the perpetration of the scheme.  *See Wiand*, 86 F. Supp. 3d at 1319-20.  In reviewing the FUFTA claim, the court analyzed whether the movement of funds "into and amongst" multiple accounts at the bank were "transfers" as defined by FUFTA.  *Id.* at 1324-28.  The court found that based on the plain language of FUFTA, where the Ponzi schemer "was essentially transferring the funds to and from himself, he (and the entities he controlled) never disposed of or parted with the 'assets' and therefore no transfers took place." *Id.* at 1327.

- 15 -

Here, as in *Wiand*, the transfers did not result in any loss of dominion or control by the Ponzi schemers, as the allegations in the Complaint establish that the alleged transfers were between and among the Receivership Entities, all of which were working in concert under the direction of the individual schemers to perpetrate a fraud.  *See* Compl. ¶¶ 19-20, 50.  Therefore, the Receiver has not only failed to allege the existence of a FUFTA creditor, but he has also failed to allege the existence of a FUFTA transfer.  The FUFTA claim should therefore be dismissed with prejudice.

### 3.    The Receiver Has Not Alleged That JPMC Is A FUFTA Transferee.

Just as the Receiver has not established a FUFTA transfer because there was no "disposing of or parting with" funds, he concomitantly fails to allege a FUFTA transferee that took control of such funds.  "[A] recipient of an avoidable transfer is an initial transferee only if they exercise legal control over the assets received, such that they have the right to use the assets for their own purposes, and not if they merely served as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee."  *Wiand*, 86 F. Supp. 3d at 1329 (quoting *In re Pony Express Delivery Servs., Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006)).  As a matter of law, the plain language of FUFTA precludes the Receiver's theory that a bank can be liable as an initial transferee or a "bad faith commercial conduit" (Compl. ¶ 51), merely for holding a depositor's funds in an account.  It cannot.

Multiple courts have analyzed and rejected FUFTA claims identical to the Receiver's claim here.  For instance, in *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, the plaintiff alleged that the defendant bank was liable under FUFTA because it accepted another defendant's transfers of funds into various accounts held at the bank by the co-defendant and his entities.  534 F. Supp. 2d 1326, 1343-44 (S.D. Fla. 2008).  The court noted that the plaintiff never alleged the bank was an intended recipient of the transferred funds, and moreover, never

alleged the bank actually controlled any of the funds at issue. *Id.* Recognizing that the bank was not a transferee due to its lack of ownership or control over the funds, the court dismissed the plaintiff's FUFTA claim. *Id.* Similarly, in *Wiand*, the Court granted summary judgment in favor of the defendant bank on a FUFTA claim, holding that the bank "could not have been an initial transferee because [the Ponzi schemer] never 'disposed of' or 'parted with' the funds in question" merely by depositing them in his bank accounts and the accounts of the entities he controlled. 86 F. Supp. 3d at 1328.

Likewise, Florida state courts, as well as federal courts applying analogous federal fraudulent transfer laws, are in accord that depositary banks should not be deemed "transferees" for fraudulent transfer purposes. *See Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004) (holding that "FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party (like First Union [the Ponzi scheme's depositary bank]) for monetary damages"); *In re Customs Contractors, LLC*, 745 F.3d 1342, 1350 (11th Cir. 2014) ("[A] bank that merely receives funds as a deposit into an account does not exercise control over those funds…. [W]hen a bank receives funds in the form of a deposit, the attendant obligations owed to the transferor – namely to return the funds upon request – are sufficiently important that we will not hold the bank liable as an initial transferee.").

The same result reached in each of these cases is required here. The Ponzi schemers never disposed of or parted with the disputed funds merely by depositing them in bank accounts at JPMC. Furthermore, the Receiver does not even attempt to allege that JPMC took control of those funds so as to qualify as an initial FUFTA transferee. As a result, the Receiver's FUFTA claim fails as a matter of law.

4.     **The Receiver Has Not Alleged Facts Establishing That JPMC Was The Intended Recipient Of The Purported Transfers Or Ever Had Control Over The Transferred Funds.**

The mere conduit rule also bars the Receiver's FUFTA claims.  This doctrine bars FUFTA claims at the motion to dismiss stage of the litigation where the facts alleged in the complaint establish: (1) that the defendant did not have control over the assets received, *i.e.*, that it merely served as a conduit for the assets that were under the actual control of the transferor, and (2) that it acted in good faith and as an innocent participant in the fraudulent transfer. *Perlman*, 559 F. App'x at 994.[4]

While the Receiver asserts the legal conclusion that JPMC "was not acting as a good faith 'conduit'" (Compl. ¶ 55), he alleges no facts showing that JPMC was the intended recipient of the purported transfers or that JPMC controlled the transferred funds.  Indeed, the facts alleged – including that the purported transfers were deposited into accounts controlled by the Receivership Entities and the Ponzi schemers – indicate otherwise.  *See id.* ¶¶ 28, 37, 52.

As the Eleventh Circuit has explained, "[w]hen trustees seek recovery of allegedly fraudulent conveyances from banks, the outcome of the cases turn on whether the banks actually controlled the funds or merely served as conduits, holding money that was in fact controlled by either the transferor or the real transferee." *In re Chase & Sanborn Corp*., 848 F.2d 1196, 1200 (11th Cir. 1988).  Where, as here, a bank "receive[s] money for the sole purpose of depositing it into a customer's account, … the bank never has actual control of the funds." *Id.*  For that reason, where defendants "simply held the property as agents or conduits for one of the real parties to the transaction," they "had never actually *controlled* the funds and therefore it would be inequitable to allow recovery against them." *Id.* (emphasis in original).  Here, the Receiver

---

[4] "While normally an affirmative defense cannot be decided at the motion to dismiss stage," it can apply where the complaint "affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Perlman*, 559 F. App'x at 994 (citation omitted).

does not even attempt to plead that JPMC controlled the funds, and so the first element of the mere conduit defense is established.

Additionally, the Receiver fails to allege facts showing that JPMC acted in bad faith. When determining whether there was good faith in relation to a FUFTA claim, the relevant question is whether the transferee had "actual knowledge of the Ponzi scheme, or that an ordinary prudent person would have been induced to make inquiry or investigate." *Perlman*, 559 F. App'x at 993-94. As explained, the Receiver has not alleged sufficient facts to establish that JPMC had actual knowledge of the Ponzi scheme and, therefore, has not alleged sufficient facts to establish bad faith. *See supra* Section III.B.1 (discussing actual knowledge for aiding and abetting purposes).

Further, as the Eleventh Circuit explained in *Lawrence*, a bank's duty to investigate its customers is limited. Under Florida law, banks have the "right to assume that individuals who have the legal authority to handle an entity's accounts do not misuse the entity's funds." *Lawrence*, 455 F. App'x at 907 (quoting *O'Halloran*, 350 F.3d at 1205). Therefore, the Receiver's allegations that there were "multiple badges of fraud" at the time of the transfers, including the Receivership Entities' alleged insolvency, alleged inability to pay their debts, and involvement in "fraudulent and/or illegal schemes" (Compl. ¶ 52), do not comprise "facts or circumstances as would have induced an ordinarily prudent [bank] to make inquiry" where the Receiver does not allege that any of the transactions were unauthorized. *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1319 (M.D. Fla. 2009); *see also Wiand*, 86 F. Supp. 3d at 1331 ("[I]n providing routine banking services, the Bank was under no duty to monitor [the] account activities or to investigate the transactions, and could assume that he was not misusing the funds on deposit" in analyzing good faith and mere conduit defense).

- 19 -

Thus, it is clear on the face of the Complaint that JPMC acted in good faith when carrying out its obligation to execute the transactions in question.  Accordingly, even accepting the Complaint's allegations as true, the mere conduit defense applies and the Receiver's FUFTA claim should be dismissed, in its entirety, with prejudice.

## IV.      CONCLUSION

In sum, the Receiver is overreaching, trying to press forward on a complaint that has already been tested and failed.  *See* Exh. A (*Isaiah v. Wells Fargo Bank, N.A.*, Case No. 14-15246-CA-40 (11th Judicial Circuit in and for Miami-Dade County) (Order by Thornton, J.). For all the above reasons, the Receiver's Complaint should be dismissed in its entirety and with prejudice.

Dated: June 10, 2016

By: /s/ Cristina M. Suárez
Edward M. Mullins (FBN 863920)
emullins@astidavis.com
Cristina M. (FBN 29614)
csuarez@astidavis.com
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

Mary J. Hackett (admitted pro hac vice)
mhackett@mcguirewoods.com
Jarrod D. Shaw (admitted pro hac vice)
jshaw@mcguirewoods.com
McGuireWoods LLP
625 Liberty Avenue
Pittsburgh, PA 15222
Telephone:  (412) 667-6000
Facsimile:  (412) 667-6050

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 10, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

/s/ Cristina M. Suárez